FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT FLORIDA
TAMPA, FLORIDA

UNITED STATES OF AMERICA

v.                                    CASE NO. 8:19 cr 424 T 35 cpT

                                      18 U.S.C. § 1349

TERESA JOHNSON

## INFORMATION

The United States Attorney charges:

## COUNT ONE
### (Conspiracy to Commit Health Care Fraud)

### A. Introduction

At times material to this Information:

1.     Medicare was a federal insurance program that provided
coverage for people 65 and older, people under 65 with certain disabilities,
and people of all ages with end-stage renal disease. Medicare was a health
benefit program as defined by 18 U.S.C. § 24(b). Individuals who received
benefits under Medicare were commonly referred to as Medicare
beneficiaries.

2.     The Medicare program was divided into different parts that
provided benefits for different areas of medical care. Part A of Medicare
covered health services provided by hospitals, skilled nursing facilities,

hospices, and home health agencies. Part B of the Medicare program covered, among other things, certain physician services, outpatient services, and other services, including durable medical equipment that is medically necessary and ordered by a licensed physician or other qualified health care professionals. Part C of Medicare, commonly referred to as Medicare Advantage plans, provided beneficiaries with all the services provided under Parts A and B (except Hospice care), in addition to mandatory supplemental benefits and optional supplemental benefits. Medicare Part D provided prescription drug coverage to beneficiaries who opted for this coverage.

3.     The State of Florida Medicaid Program (Medicaid) was a federal health care benefit program that provided coverage for indigent persons, children, and certain disabled individuals. The Medicaid program was funded through both federal and state tax revenue. The Medicaid program, as established by the Social Security Act, was a cooperative federal-state health-care benefit program that enabled the states to furnish necessary medical benefits, items, and services to certain families and individuals who were unable to meet the costs of the benefits, items, and services.

4.     The Centers for Medicare and Medicaid Services (CMS) was an agency of the Department of Health and Human Services (HHS), and was the federal governmental body responsible for the administration of the Medicare program. For Medicaid, CMS, in turn, authorized each state to establish a

2

state agency to administer the Medicaid program component in that state. In Florida, the Medicaid program was administered by the Florida Agency for Health Care Administration (AHCA), which divided the state into various operational Areas (or rate zones), to facilitate its administration of the program.

5.      In order to be reimbursed by Medicaid, an entity providing medical benefits and services to Medicaid beneficiaries, the provider, first had to enter into a Medicaid Provider Enrollment Agreement. This Medicaid Provider Enrollment Agreement was submitted to AHCA for approval

6.      A National Provider Identification (NPI) number was a unique ten-digit identification number used to cover health care providers and medical entities. A Provider Identification Number (PIN) or Provider Transaction Access Number (PTAN) was specific to Medicare and was issued to a health care provider upon their enrollment with Medicare.

7.      TRICARE was a triple option health care benefit plan of the United States Department of Defense (DoD) Military Health System. Eligible TRICARE beneficiaries included members of all seven branches of the Uniformed Services: Army, Air Force, Navy, Marine Corps, National Oceanic Atmospheric Administration, Coast Guard, and the commissioned corps of the Public Health Service. TRICARE received federal funds allocated through the annual DoD Appropriation Acts.   A private corporation under

3

contract with TRICARE acted as a fiscal intermediary and was authorized to receive and process claims for reimbursement on behalf of TRICARE. Health care service providers were reimbursed with federal funds for benefits and services provided to TRICARE beneficiaries.

8.     The Civilian Health and Medical Program of the Department of Veterans Affairs (CHAMPVA) was a comprehensive health care program in which VA shared the cost of covered health care services and supplies, including medication, with eligible beneficiaries. Generally, the VA's CHAMPVA program covered all medically and psychologically necessary heath care services. The program was administered by the Veterans Health Administration Office of Community Care located in Denver, Colorado. One of the eligible categories for CHAMPVA was the spouse or child of a veteran who had been rated permanently and totally disabled for a service-connected disability by a VA regional office.

9.     Doctor 1, a person known to the United States and to the defendant, was a licensed medical doctor who owned and operated clinics located in Crystal River, Spring Hill, and Celebration, Florida, within the Middle District of Florida (referred herein as the "Florida Clinics"). Doctor 1 owned and operated a medical practice or Professional Association in the doctor's name, which operated all Florida Clinics, and was issued an NPI number and a PIN number from Medicare. Dcotor 1 was enrolled as a Florida

Medicaid Provider who billed the Florida Medicaid program for services purportedly provided to indigent or disabled persons. More than half of the patients at Florida Clinics were Medicare, Medicaid, Tricare and/or CHAMPVA beneficiaries. Among others, Doctor 1 hired health care providers who were not authorized Medicare or Medicaid providers, including certain providers who had been denied admission to or excluded from those government health care programs (collectively referred to herein as "Prohibited Providers").

10.    The Florida Clinics utilized and paid for eClinical, an electronic health records system, to create and maintain their health records and for billing purposes.

11.    Defendant Teresa Johnson owned and operated Tri-County Medical Billing (Tri-County) in the Middle District of Florida. In November 2016, Doctor 1 provided financial assistance to Johnson, who had previously provided coding services and worked for several years at the Florida Clinics, to create Tri-County. Tri-County submitted claims for reimbursement to Medicare, Medicaid, Tricare, CHAMPVA and other health care plans, for office visits, services, and tests rendered at the Florida Clinics (collectively referred herein as "Clinic Services"). Per contract, Tri-County was paid 3% of the collected claims (with a portion subtracted to re-pay Doctor 1 for costs provided to start Tri-County). Tri-County was granted access to Florida

5

Clinics' electronic information, including eClinical, to submit Florida Clinics'

claims for Clinic Services to health care programs for reimbursement.

12.     In or around April 2018, Doctor 1's Professional Assocation filed

for Chapter 11 bankruptcy reorganization, which was converted to a Chapter

7 bankruptcy in and around September 2018. Thereafter, the Florida Clinics

closed.

## B. The Conspiracy

13.     From in or around November 2016, and continuing through

October 2018, in the Middle District of Florida and elsewhere,

TERESA JOHNSON,

the defendant herein, did knowingly and willfully combine, conspire,

confederate and agree with Doctor 1, and with others, known and unknown,

to commit health care fraud in violation of 18 U.S.C. § 1347.

## C.   Manner and Means of the Conspiracy

14.     The substance of the manner and means by which Teresa

Johnson and her co-conspirators sought to accomplish the object of the

conspiracy included, among others:

a.      It was part of the conspiracy that Teresa Johnson and her

co-conspirators, including Doctor 1, created and funded Tri-County as a

separate third-party entity to submit Florida Clinics' claims for Clinic Services

for reimbursement to health care plans, including to Medicare, Medicaid,

Tricare, and CHAMPVA.

      b.    It was further part of the conspiracy that one or more co-conspirators, including Doctor 1, knowingly hired, among others, Prohibited Providers to provide Clinic Services for Medicare, Tricare, CHAMPVA, and Medicaid beneficiaries at the Florida Clinics.

      c.    It was further part of the conspiracy that Johnson and her co-conspirators set up eClinical for all health care providers employed at the Florida Clinics so that all Clinic Services would be billed under the NPI number and PIN number for Doctor 1 as the rendering provider, including Clinic Services performed by Prohibited Providers.

      d.    It was further part of the conspiracy that conspirators, including Doctor 1, directed Florida Clinics and Tri-County staff to fraudulently submit Florida Clinics' claims for Clinic Services rendered by Prohibited Providers to the relevant health care programs falsely identifying Doctor 1 (via his NPI and PIN) as the rendering provider.

      e.    It was further part of the conspiracy that conspirators, including Doctor 1, directed Florida Clinics and Tri-County staff to fraudulently submit Florida Clinics' claims for Clinic Services rendered by nurse practitioners as if rendered by Doctor 1.

      f.    It was further part of the conspiracy that Johnson would and did knowingly submit false and fraudulent Florida Clinics' claims as

7

directed by Doctor 1.

g.      It was further part of the conspiracy that Teresa Johnson

and other co-conspirators would and did perform such acts and make

statements to hide and conceal and cause to be hidden and concealed, the

purposes of, and the acts done in furtherance of the conspiracy.

All in violation of 18 U.S.C. § 1349.

## FORFEITURE

1.      The allegations contained in Count One of this Information are

hereby realleged and incorporated by reference for the purpose of alleging

forfeiture pursuant to the provisions of 18 U.S.C. § 982(a)(7).

2.      Upon her conviction for any or all of the violations alleged in

Count One of this Information, the defendant,

TERESA JOHNSON,

shall forfeit to the United States of America, pursuant to 18 U.S.C. § 982(a)(7),

all of their interest in any property, real or personal, constituting or derived,

directly or indirectly, from gross proceeds traceable to the commission of the

said violations.

3.      The property to be forfeited includes, but is not limited to, an

order of forfeiture in the amount of proceeds obtained from the offense.

4.      If any of the property described above, as a result of any act or

omission of defendant:

a.     cannot be located upon the exercise of due diligence;

b.     has been transferred or sold to, or deposited with a third

party;

c.     has been placed beyond the jurisdiction of the court;

d.     has been substantially diminished in value; or,

e.     has been commingled with other property which cannot be

divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute

property under the provisions of 21 U.S.C. § 853(p), as incorporated by 18

U.S.C. § 982(b).

MARIA CHAPA LOPEZ
United States Attorney

By: _____

Kelley C. Howard-Allen
Assistant United States Attorney

By: _____

Jay Trezevant
Assistant United States Attorney
Chief, Economic Crimes Section