AF Approval _____

Chief Approval

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITED STATES OF AMERICA

v.

CASE NO. 8:19-Cr-424-T-35CPT

TERESA JOHNSON

### PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

Maria Chapa Lopez, United States Attorney for the Middle District of

Florida, and the defendant, Teresa Johnson, and the attorney for the

defendant, Adam Allen, mutually agree as follows:

**A.   Particularized Terms**

1.   Count Pleading To

The defendant shall enter a plea of guilty to Count One of the

Information.  Count One charges the defendant with conspiracy to commit

health care fraud, in violation of 21 U.S.C. § 1349.

2.   Maximum Penalties

Count One carries a maximum sentence of ten years

imprisonment, a fine of up to $250,000.00, a term of supervised release of not

more than three years, and a special assessment of $100.  With respect to

certain offenses, the Court shall order the defendant to make restitution to any

Defendant's Initials _____

victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3.      Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty.  A charge of conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349, requires the United States to prove the following elements beyond a reasonable doubt:

First:      two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit health care fraud, as charged in the indictment; and

Second:      the Defendant knew the unlawful purpose of the plan and willfully joined in it.

4.      Indictment Waiver

Defendant will waive the right to be charged by way of indictment before a federal grand jury.

5.      Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the

Defendant's Initials _____                2

United States has agreed to recommend in this plea agreement. The parties

understand that such a recommendation is not binding on the Court and that,

if it is not accepted by this Court, neither the United States nor the defendant

will be allowed to withdraw from the plea agreement, and the defendant will

not be allowed to withdraw from the plea of guilty.

      6.    No Further Charges

      If the Court accepts this plea agreement, the United States

Attorney's Office for the Middle District of Florida agrees not to charge

defendant with committing any other federal criminal offenses known to the

United States Attorney's Office at the time of the execution of this agreement,

related to the conduct giving rise to this plea agreement.

      7.    Acceptance of Responsibility - Three Levels

      At the time of sentencing, and in the event that no adverse

information is received suggesting such a recommendation to be unwarranted,

the United States will recommend to the Court that the defendant receive a

two-level downward adjustment for acceptance of responsibility, pursuant to

USSG §3E1.1(a). The defendant understands that this recommendation or

request is not binding on the Court, and if not accepted by the Court, the

defendant will not be allowed to withdraw from the plea.

Defendant's Initials _____      3

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8.    Low End

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a sentence at the low end of the applicable guideline range, as calculated by the Court. The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Defendant's Initials _____                    4

9.    Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require.  If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both.  If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a

Defendant's Initials _____                    5

motion for a reduction of sentence within one year of the imposition of

sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant

understands that the determination as to whether "substantial assistance" has

been provided or what type of motion related thereto will be filed, if any, rests

solely with the United States Attorney for the Middle District of Florida, and

the defendant agrees that defendant cannot and will not challenge that

determination, whether by appeal, collateral attack, or otherwise.

10.   Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no

self-incriminating information which the defendant may provide during the

course of defendant's cooperation and pursuant to this agreement shall be used

in determining the applicable sentencing guideline range, subject to the

restrictions and limitations set forth in USSG §1B1.8(b).

11.   Cooperation - Responsibilities of Parties

a.   The government will make known to the Court and other

relevant authorities the nature and extent of defendant's cooperation and any

other mitigating circumstances indicative of the defendant's rehabilitative

intent by assuming the fundamental civic duty of reporting crime. However,

the defendant understands that the government can make no representation

Defendant's Initials         6

that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

       b.     It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

       (1)     The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

       (2)     The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by

Defendant's Initials _____         7

imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

Defendant's Initials _____     8

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

8.     Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 982(a)(7), whether in the possession or control of the United States, the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, an order of forfeiture in the amount of proceeds the defendant obtained as the result of the commission of the offense(s) to which the defendant is pleading guilty, which will be established at or before sentencing. The defendant acknowledges and agrees that: (1) the defendant obtained this amount as a result of the commission of the offense(s), and (2) as a result of the acts and omissions of the defendant, the proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence. Therefore,

Defendant's Initials                   9

the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offense(s) of conviction.  The defendant further consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offense(s).  The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

The defendant also agrees to waive all constitutional, statutory, and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government.  Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time

Defendant's Initials                          10

it is entered.  In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all substitute assets and to transfer custody of such assets to the United States before the defendant's sentencing.  To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets.  The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.  The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG §1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to any substitute assets before the defendant's sentencing.  In addition to providing full and complete

Defendant's Initials           11

information about substitute assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

Defendant's Initials           12

### B.   <u>Standard Terms and Conditions</u>

1.   <u>Restitution, Special Assessment and Fine</u>

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement.  The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013.  The special assessment is due on the date of sentencing.

Defendant's Initials           13

The defendant understands that this agreement imposes no limitation as to fine.

2.    Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any

Defendant's Initials             14

misstatements or inaccuracies.  The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

     5.    <u>Financial Disclosures</u>

     Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition.  The defendant promises that her financial statement and disclosures will be complete, accurate and truthful and will include all assets in which she has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party.  The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years.  The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information

Defendant's Initials        15

concerning the defendant, for the purpose of making any recommendations to

the Court and for collecting any assessments, fines, restitution, or forfeiture

ordered by the Court.  The defendant expressly authorizes the United States

Attorney's Office to obtain current credit reports in order to evaluate the

defendant's ability to satisfy any financial obligation imposed by the Court.

      6.    <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to

nor bound by this agreement.  The Court may accept or reject the agreement,

or defer a decision until it has had an opportunity to consider the presentence

report prepared by the United States Probation Office.  The defendant

understands and acknowledges that, although the parties are permitted to

make recommendations and present arguments to the Court, the sentence will

be determined solely by the Court, with the assistance of the United States

Probation Office.  Defendant further understands and acknowledges that any

discussions between defendant or defendant's attorney and the attorney or

other agents for the government regarding any recommendations by the

government are not binding on the Court and that, should any

recommendations be rejected, defendant will not be permitted to withdraw

defendant's plea pursuant to this plea agreement.  The government expressly

reserves the right to support and defend any decision that the Court may make

Defendant's Initials _____        16

with regard to the defendant's sentence, whether or not such decision is

consistent with the government's recommendations contained herein.

      7.    <u>Defendant's Waiver of Right to Appeal the Sentence</u>

      The defendant agrees that this Court has jurisdiction and

authority to impose any sentence up to the statutory maximum and expressly

waives the right to appeal defendant's sentence on any ground, including the

ground that the Court erred in determining the applicable guidelines range

pursuant to the United States Sentencing Guidelines, except (a) the ground

that the sentence exceeds the defendant's applicable guidelines range <u>as</u>

<u>determined by the Court</u> pursuant to the United States Sentencing Guidelines;

(b) the ground that the sentence exceeds the statutory maximum penalty; or (c)

the ground that the sentence violates the Eighth Amendment to the

Constitution; provided, however, that if the government exercises its right to

appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the

defendant is released from his waiver and may appeal the sentence as

authorized by 18 U.S.C. § 3742(a).

      8.    <u>Middle District of Florida Agreement</u>

      It is further understood that this agreement is limited to the

Office of the United States Attorney for the Middle District of Florida and

cannot bind other federal, state, or local prosecuting authorities, although this

Defendant's Initials         17

office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.      Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.      Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront

Defendant's Initials           18

and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11. Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

Defendant's Initials ⟨TA⟩          19

FACTS

**Federal Health Care Programs**

Medicare was a federal insurance program that provided coverage for people 65 and older, people under 65 with certain disabilities, and people of all ages with end-stage renal disease. Medicare was a health benefit program as defined by 18 U.S.C. § 24(b). Individuals who received benefits under Medicare were commonly referred to as Medicare beneficiaries. The Medicare program was divided into different parts that provided benefits for different areas of medical care. Part A of Medicare covered health services provided by hospitals, skilled nursing facilities, hospices, and home health agencies. Part B of the Medicare program covered, among other things, certain physician services, outpatient services, and other services, including durable medical equipment that is medically necessary and ordered by a licensed physician or other qualified health care professionals.  Part C of Medicare, commonly referred to as Medicare Advantage plans, provided beneficiaries with all the services provided under Parts A and B (except Hospice care), in addition to mandatory supplemental benefits and optional supplemental benefits. Medicare Part D provided prescription drug coverage to beneficiaries who opted for this coverage.

Defendant's Initials                 20

The State of Florida Medicaid Program (Medicaid) was a federal health care benefit program that provided coverage for indigent persons, children, and certain disabled individuals. The Medicaid program was funded through both federal and state tax revenue. The Medicaid program, as established by the Social Security Act, was a cooperative federal-state health-care benefit program that enabled the states to furnish necessary medical benefits, items, and services to certain families and individuals who were unable to meet the costs of the benefits, items, and services.

The Centers for Medicare and Medicaid Services (CMS) was an agency of the Department of Health and Human Services (HHS), and was the federal governmental body responsible for the administration of the Medciare program. For Medicaid, CMS, in turn, authorized each state to establish a state agency to administer the Medicaid program component in that state. In Florida, the Medicaid program was administered by the Florida Agency for Health Care Administration (AHCA), which divided the state into various operational Areas (or rate zones), to facilitate its administration of the program.

In order to be reimbursed by Medicaid, an entity providing medical benefits and services to Medicaid beneficiaries, the provider, first had to enter

Defendant's Initials _____        21

into a Medicaid Provider Enrollment Agreement. This Medicaid Provider

Enrollment Agreement was submitted to AHCA for approval

A National Provider Identification (NPI) number was a unique ten-digit

identification number used to cover health care providers and medical entities.

A Provider Identification Number (PIN) or Provider Transaction Access

Number (PTAN) was specific to Medicare and was issued to a health care

provider upon their enrollment with Medicare.

TRICARE was a triple option health care benefit plan of the United

States Department of Defense (DoD) Military Health System.  Eligible

TRICARE beneficiaries included members of all seven branches of the

Uniformed Services: Army, Air Force, Navy, Marine Corps, National

Oceanic Atmospheric Administration, Coast Guard, and the commissioned

corps of the Public Health Service. TRICARE received federal funds allocated

through the annual DoD Appropriation Acts.  A private corporation under

contract with TRICARE acted as a fiscal intermediary and was authorized to

receive and process claims for reimbursement on behalf of TRICARE.  Health

care service providers were reimbursed with federal funds for benefits and

services provided to TRICARE beneficiaries.

The Civilian Health and Medical Program of the Department of

Veterans Affairs (CHAMPVA) was a comprehensive health care program in

Defendant's Initials                       22

which VA shared the cost of covered health care services and supplies, including medication, with eligible beneficiaries. Generally, the VA's CHAMPVA program covered all medically and psychologically necessary heath care services. The program was administered by the Veterans Health Administration Office of Community Care located in Denver, Colorado.  One of the eligible categories for CHAMPVA was the spouse or child of a veteran who had been rated permanently and totally disabled for a service-connected disability by a VA regional office.

Claims were submitted using the Current Procedural Terminology (CPT) codes.  CPT codes 99213 and 99214 were used to document outpatient in-person visits for the evaluation and management of established patients. When a nurse practitioner conducted an office visit, a modifier code should have been used to indicate that a nurse practitioner provided the service, instead of a doctor. The effect of using this modifying code was to reduce the amount of reimbursement.

### The Florida Clinics and Tri-County Billing

Doctor 1 was a licensed medical doctor who owned and operated three clinics located in Crystal River, Spring Hill, and Celebration, Florida, within the Middle District of Florida (hereinafter referred to as the "Florida Clinics"). Doctor 1 owned, operated, and billed federal health care programs for services

Defendant's Initials           23

conducted at the Florida Clinics through a medical professional association in Doctor 1's name. These services included office visits, on-site radiologic tests, including X-rays and MRIs, and other tests, including bloodwork, nerve conduction studies and allergy tests (hereinafter referred to as "Clinic Services").

Doctor 1 and the Florida Clinics were issued an NPI number and a PIN number from Medicare. Doctor 1 was also enrolled as a Florida Medicaid Provider and so was able to submit claims to the Florida Medicaid program for services purportedly provided to indigent or disabled persons. More than half of Florida Clinics' patients were Medicare, Medicaid, Tricare and/or CHAMPVA beneficiaries. Among others, Doctor 1 hired health care providers who were not authorized Medicare or Medicaid providers, including certain providers who had been denied admission to or excluded from those government health care programs (collectively referred to herein as "Prohibited Providers"). The Prohibited Providers category specifically included Doctor 2, a pain management doctor, and Doctor 3, a cardiologist, who are known to the defendant and to the government.

Defendant Teresa Johnson worked for Doctor 1 at the Florida Clinics for several years, from approximately 2010 through November 2015, with some breaks in service, in various job positions, including administrative

Defendant's Initials _TJ_          24

assistant, clinic manager and as a medical coder and supervisory medical biller. During her employment at the Florida Clinics, there existed a special studies sheet of tests and diagnosis codes that was used by Florida Clinics' staff and health care providers to maximize the scheduling and reimbursement for such tests and services. Johnson knew that some of these tests that were administered at the Florida Clinics were medically unnecessary.

In and around July 2016, Johnson began working on weekends to submit Florida Clinics' claims for radiologic services to health care programs for reimbursement. In or around November 2016, Johnson opened and operated Tri-County Medical Billing (Tri-County) in the Middle District of Florida. Doctor 1 provided financial assistance to Johnson to open Tri-County as a separate third-party biller in order to submit claims to Medicare, Medicaid, Tricare, CHAMPVA and other health care plans, for all Clinic Services at the Florida Clinics. Per contract, Tri-County was paid 3% of the collected claims, with a portion subtracted to re-pay Doctor 1 for costs provided to start Tri-County.

The Florida Clinics utilized and paid for eClinical, an electronic health records system, to create and maintain their health records and for purposes of billing. Tri-County was granted access to Florida Clinics' electronic information, including eClinical, to submit Florida Clinics' claims for Clinic

Defendant's Initials           25

Services to health care programs for reimbursement. All employees of the Florida Clinics were directed to use eClinical for all Clinic Services and health care records; however, the radiology department maintained written logs of Florida Clinics' patients who received radiology services.

eClinical was set up at the direction of Doctor 1 so that all Clinic Services would be captured and recorded.  Other than radiology staff, all Florida Clinics' personnel utilized and logged into eClinical under the NPI number and PIN number for Doctor 1 as the rendering provider, even though other health care providers, not Doctor 1, rendered the Clinic Services. Doctor 1 specifically directed Florida Clinics and Tri-County staff to submit Florida Clinics' claims for Clinic Services rendered by Prohibited Providers to the relevant health care programs falsely identifying Doctor 1 (via his NPI and PIN), as the rendering provider (with the exception of one Medicare-approved Florida Clinics' podiatrist).

Johnson, who used eClinical for submitting Florida Clinics' claims, knew that many of the Clinic Services claims were false and fraudulent and should not have been submitted for reimbursement to government health care programs because the Clinic Services had not been performed by Doctor 1. Instead, as Johnson and Doctor 1 knew, the Clinic Services were performed by other health care providers, including by Prohibited Providers. Johnson

Defendant's Initials _____      26

billed for these claims, as directed by Doctor 1, knowing that they were false

and fraudulent.  Indeed, as directed by Doctor 1, Johnson even submitted false

and fraudulent claims for Clinic Services purportedly rendered by Doctor 1

when he was out of the country, or otherwise not physically present at the

Florida Clinics.

Johnson was also directed by Doctor 1 to submit false and fraudulent

claims for Clinic Services provided by nurse practitioners, without the required

modifier CPT code signifying that a nurse practitioner, not a doctor,

performed the Clinic Services; which increased the reimbursement amount to

the Florida Clinics and to Doctor 1.

Per Doctor 1's directions, Johnson also submitted false and fraudulent

claims from April through August 2018, for Clinic Services provided to

Medicare and Medicaid beneficiaries by Doctor 3, who was specifically

excluded from submitting claims for any Clinic Services, directly or indirectly,

to any government health care program.  These false and fraudulent claims

included billing government federal health programs for radiologic and other

tests performed at the Florida Clinics that were referred and read by the

Doctor 3.  Further, per Doctor 1's direction, Johnson also submitted claims for

Doctor 2, who had been denied approval as a Medicaid provider.

Defendant's Initials                 27

12.     Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.     Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this _____ 4 _____ day of _____ Jay _____ 2018.

MARIA CHAPA LOPEZ
United States Attorney

_____
Teresa Johnson
Defendant

_____
Kelley Howard-Allen
Assistant United States Attorney

_____
Adam Allen
Attorney for Defendant

_____
Jay G. Trezevant
Assistant United States Attorney
Chief, Economic Crimes Section

Defendant's Initials _____        28